```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                         HAMMOND DIVISION


ENRIQUE HERRERA, JR., aka      )
Enrique Herrera,               )
                               )
          Plaintiff            )
                               )
     v.                        )   CIVIL NO. 2:10 cv 311
                               )
MARINOWARE INDUSTRIES,         )
                               )
          Defendant            )
```

## OPINION AND ORDER

This matter is before the court on the Motion for Summary Judgment [DE 17] filed by the defendant, Marinoware Industries, on July 13, 2011. For the reasons set forth below, the motion is **GRANTED**.

### Background

The plaintiff, Enrique Herrera, Jr., was hired by Marinoware Industries as a laborer on February 11, 2008, and was assigned the position of coil loader in May 2008. Herrera was required to operate a forklift as a coil loader. Prior to using the forklift, Herrera had to watch a combi-lift and forklift video and take a written and hands-on test. Herrera testified at his deposition that the video was a safety video, which instructed the employees about staying away from machines while they were operating, staying out of the way of forklifts, using designated walking zones, using a forklift generally, and wearing the proper

safety gear.  (Dep. of Enrique Herrera, pp. 24-25)  He did not receive any other safety training.

Marinoware was divided into two areas, one to process heavy gauge coils and the other to process light gauge coils.  Marinoware used a heavy gauge forklift in the area of the plant that processed heavy gauge coils, and a light gauge forklift in the other.  Herrera testified that the light gauge forklift was appropriate for lifting pallets but should not have been used to lift steel coils.  Herrera completed his forklift inspection reports every day to reflect that the light gauge forklift was broken and not appropriate to lift the coils.  The forklift could be tilted at a declining angle, could not be tilted at an inclining angle, and only could be raised to a point where it was level.  The forklift would bend downward when lifting heavy coils, and the heavy gauge forklift had to be used to lift coils that the light gauge forklift was unable to lift.

Herrera complained daily to his supervisors that the forklift was not safe for moving steel coils.  Herrera's supervisors informed him that a proper forklift would be coming.  Although Herrera thought the forklift was unsafe, he continued to use it because he feared losing his job.  On an average day, Herrera moved approximately 70 to 80 coils, and five to six would not be strapped properly and would fall off the forklift.

Herrera reported to work for an overtime shift on May 28, 2008.  Another coil loader, Elliot Gerardo, also was called in to work the same shift.  Herrera and Gerardo decided that Gerardo would operate the forklift and that Herrera would complete the paperwork.  While Herrera was completing the paperwork, he heard Gerardo repeatedly drop a coil he was trying to load.  Herrera went over to help and noticed that the coil was not strapped.  Herrera got into the forklift and lifted the coil.  The coil began to unravel, so Herrera stopped lifting it, leaving the coil three inches off the floor.  Herrera and Gerardo re-wrapped the coil, and Herrera stood in front of it and held it with both hands to keep it from unraveling while Gerardo went to get tape.  Herrera encountered five to six unraveled coils a day and dealt with this coil the same way he dealt with others.

When the coil began to slide off the forklift, Herrera yelled to Gerardo for help.  Gerardo panicked and did nothing to help.  Herrera tried to keep the coil from coming towards him, but he was unable to do so.  The coil fell off the forklift and crushed him, shattering his pelvis and causing injury to his back and legs, severe internal injuries, and severe nerve damage.  Herrera was in a coma for one month and hospitalized for two and a half months.  Herrera spent an additional month in a rehabilitation center.  He is incapable of walking normally and has to

use crutches. He continues to have leg spasms, loss of feeling in his left leg, cannot move his toes, cannot bend, has swelling in his feet, and has nerve pain in his lower extremities.

Herrera was assigned a 60 percent whole person permanent partial impairment and is receiving weekly payments through Marinoware's workers' compensation carrier in the amount of $330. Marinoware's workers' compensation carrier also paid $727,238.46 in medical expenses.

Herrera filed a complaint against Marinoware on May 28, 2010, alleging that Marinoware intentionally inflicted injury upon him and is liable for its actions. Marinoware filed a motion for summary judgment on July 13, 2011, taking the position that it did not intentionally injure Herrera and that the Workers' Compensation Act is the exclusive remedy.

## Discussion

A claim falls under the Workers' Compensation Act if it is a personal injury arising out of and in the course of employment. **House v. D.P.D., Inc**., 519 N.E.2d 1274, 1275 (Ind. App. 1988). "An injury arises out of employment when there is a causal relationship between the injury and the employment." **Evans v. Yankeetown Dock Corp**., 491 N.E.2d 969, 975 (Ind. 1986). "'In the course of the employment' refers to the time, place, and circum-

4

stances under which the injury occurs." *Wine—Settergren v. Lamey*, 716 N.E.2d 381, 390 (Ind. 1999).

Under the Indiana Workers' Compensation Act, "[t]he rights and remedies granted to an employee . . . on account of personal injury . . . by accident shall exclude all other rights and remedies of such employee . . . on account of such injury . . . except for [remedies for compensating victims of violent crimes]." Ind. Code. §22—3—2—6. The Indiana Workers' Compensation Act is the exclusive remedy for an employee subject to the Act, and it abolished all common law actions against an employer likewise subject to the Act. *Kottis v. U.S. Steel Corp.*, 543 F.2d 22, 24 (7th Cir. 1976) (*quoting Hickman v. W. Heating & Air Conditioning Co.*, 207 F.Supp. 832, 833 (N.D. Ind. 1962)). *See also Sims v. U.S. Fid. & Guar. Co.*, 782 N.E.2d 345, 349—50 (Ind. 2003) (exclusivity provision bars a court from hearing common law actions for the same injury that the employee is entitled to receive workers' compensation benefits).

Once an employee has elected to receive compensation under the Workers' Compensation Act, he is precluded from initiating a common law suit. By accepting and receiving compensation, the employee "concedes that the injury was accidental in nature and that it arose out of and in the course of employment." *Williams v. Delta Steel Corp.*, 695 N.E.2d 633, 635 (Ind. App. 1998). The

employee may not repudiate his position and claim that the injury was intentional. *Williams*, 695 N.E.2d at 635.

In its motion for summary judgment, Marinoware first objects that Herrera cannot pursue his tort claim because he accepted benefits under the Workers' Compensation Act. By making this assertion, Marinoware challenges the court's exercise of jurisdiction. See *Tippmann v. Hensler*, 716 N.E.2d 372, 375 (Ind. 1999) (explaining that claims that the Workers' Compensation Act bars a plaintiff's complaint is an attack on subject matter jurisdiction). Challenges to subject matter jurisdiction are more appropriately raised in a motion to dismiss. *Tippmann*, 716 N.E.2d at 374 ("[T]he use of a summary judgment motion is an inappropriate manner in which to claim that the exclusivity provision of the [Workers' Compensation] Act bars a plaintiff's complaint."). However, the court will not dismiss a challenge to subject matter jurisdiction because it is raised in the wrong form. The court instead will evaluate the motion as a motion to dismiss. *Tippmann*, 716 N.E.2d at 374 (considering a motion for summary judgment raising the issue of whether the exclusivity provision of the Workers' Compensation Act bars recovery as a motion to dismiss); *Foshee v. Shoney's, Inc.*, 637 N.E.2d 1277, 1280 (Ind. 1994) (same).

6

Federal Rule of Civil Procedure 12(b)(1) allows for dismissal if the court lacks subject matter jurisdiction. *See **United Phosphorus, LTD v. Angus Chemical Company***, 322 F.3d 942, 946 (7th Cir. 2003), *cert. denied*, 540 U.S. 1003, 124 S.Ct. 533, 157 L.Ed.2d 408 (2003). The lack of subject matter jurisdiction never can be waived and may be raised at any point in the proceedings. ***United Phosphorus, LTD***, 322 F.3d at 946; ***O'Brien v. R.J. O'Brien & Associates, Inc.***, 998 F.2d 1394, 1399 (7th Cir. 1993).

Normally, when evaluating a motion to dismiss, the court must read the complaint liberally and accept the well pleaded facts as true. ***Sapperstein v. Hager***, 188 F.3d 852, 855 (7th Cir. 1999). Although recovery may appear unlikely, the court must allow a claim to proceed where the allegations in the complaint demonstrate that the pleader may be entitled to relief. ***Sapperstein***, 188 F.3d at 855. A party may attack subject matter jurisdiction by making either a facial attack, arguing that the allegations in the complaint do not give rise to jurisdiction, or by making a factual attack. A factual attack is a challenge to the factual basis supporting subject matter jurisdiction. ***Villasenor v. Industrial Wire & Cable, Inc.***, 929 F.Supp. 310, 312 (N.D. Ill. 1996). When presented with a factual attack "[t]he district court may properly look beyond the jurisdictional

allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." ***Ezkiel v. Michel***, 66 F.3d 894, 895 (7th Cir. 1995); ***Villasenor***, 929 F.Supp. at 312. "The presumption of correctness that we accord to a complaint's allegations falls away on the jurisdictional issue once a defendant proffers evidence that calls the court's jurisdiction into question." ***Sapperstein***, 188 F.3d at 855. When the defendant raises a question to the court's jurisdiction, the plaintiff must come forward with evidence showing that the court retains jurisdiction. ***Sapperstein***, 188 F.3d at 855.

Marinoware submitted a form labeled "Agreement to Compensation of Employee & Employer" to show that Herrera was receiving benefits under the Workers' Compensation Act and, therefore, precluded from pursuing tort remedies. The form sets forth the amount of benefits Herrera was to receive, the term of the benefits, and the medical costs paid. Although the form bears a signature for Marinoware, the space provided for Herrera's signature is blank.

An employee may elect Workers' Compensation Benefits through a private agreement with his employer, as Marinoware alleges occurred here, and waive his right to pursue tort remedies. The Indiana Workers' Compensation Act sets forth several requirements

8

to make private agreements binding on the employee. The agreement must be reduced to writing and bear the signature of both the employer or its insurance carrier and the employee or his dependent. Ind. Code §22-3-2-13 ("No release or settlement of claim for damages by reason of injury or death, and no satisfaction of judgment in the proceedings, shall be valid without the written consent of both employer or the employer's compensation insurance carrier and employee or his dependents . . ."). The agreement must be submitted to the Workers' Compensation Board for approval within seven days. Otherwise, the agreement is voidable by the employee or his dependent. Ind. Code §22-3-4-4. No agreement by an employee or his dependents is valid until it is approved by the Workers' Compensation Board. Ind. Code §22-3-7-30. Therefore, the employer is not relieved of tort liability when the parties reach a private agreement until the employee signs the agreement and it is submitted to the board within seven days and approved. See *Williams*, 695 N.E.2d at 635 (holding that the exclusivity provision of the Workers' Compensation Act precluded pursuit of a tort claim because the plaintiff signed an agreement with his employer that was approved by the Workers' Compensation Board).

Marinoware has failed to call the court's jurisdiction into question. The "Agreement to Compensation of Employee & Employer"

does not bear Herrera's signature and, therefore, does not show that he agreed to its terms.  Although Herrera received benefits from Marinoware's insurance provider, "the voluntary acceptance of workers' compensation payments, without any affirmative act to seek those benefits, does not necessarily operate to bar the recovery of civil damages."  *Wells v. Enloe*, 669 N.E.2d 368, 376 (Ind. App. 1996).  Assuming, *arguendo*, Herrera accepted the terms by receiving benefits, Marinoware did not submit any proof that the agreement was submitted to or approved by the Board of Workers' Compensation.  Absent proof that the agreement was submitted to the board and approved, the agreement is not valid and is voidable by Herrera.  *See* Ind. Code §22-3-4-4.  Because the record is devoid of evidence of a valid, binding agreement waiving Herrera's right to elect tort remedies, the court retains jurisdiction.

Marinoware next challenges whether Herrera can establish that Marinoware's actions were intentional or deliberate to take his claim beyond the scope of the Workers' Compensation Act.

Indiana has expanded the exceptions to the exclusive remedy provision of the Workers' Compensation Act to encompass intentional torts committed by the employer.  *Baker v. Westinghouse Electric Corp.*, 637 N.E.2d 1271, 1273 (Ind. 1994).  This is because the Act is limited to injuries that occurred by accident,

10

and intentional acts exceed its scope. To meet this exception, the employer itself must have intended the injury or had actual knowledge that an injury was certain to occur. *Foshee*, 637 N.E.2d at 1281; *Baker*, 637 N.E.2d at 1275. This condition is not satisfied if the intent was on behalf of a supervisor, manager, or foreman. *Baker*, 637 N.E.2d at 1275. The plaintiff must show that the corporation was the tortfeasor's alter ego, that the corporation substituted its will for that of the individual who committed the tortious acts, or that the injuries were an intended product of corporate policy. *Foshee*, 637 N.E.2d at 1281. Negligence, gross negligence, or recklessness on the employer's behalf is insufficient. *Baker*, 637 N.E.2d at 1275. "The employer that acts in the belief that it is causing an appreciable risk of harm to another may be negligent, and if the risk is great its conduct may be characterized as reckless or wanton, but it is not an intentional wrong . . . nothing short of deliberate intent to inflict an injury, or actual knowledge that an injury is certain to occur, will suffice." *Baker*, 637 N.E.2d at 1275 (citations omitted).

Upon review of the record, it appears that Herrara is asserting that Marinoware had a policy to use the light gauge forklift to lift the coils and to deal with unraveled coils in the manner that caused his injury. To establish tortious intent

11

through corporate policy, the claimant must show that the policy or decision was made through the corporation's regular decision-making channels by those with authority to do so. *Perry v. Stitzer Buick GMC, Inc.,* 637 N.E.2d 1282, 1287 (Ind. 1994); *Baker*, 637 N.E.2d at 1277. "Because the requisite level of intentionality must also exist, injury to the employee must be shown to have been the intended product of the policy or decision at issue if the proponent of jurisdiction is to prevail." *Perry*, 637 N.E.2d at 1287. The employer need not intend the specific injury, rather, it must intend an appreciable degree of harm to arise from its actions. *Tippmann*, 716 N.E.2d at 381.

In *Agee v. Central Soya Co., Inc.*, 695 N.E.2d 624, 627 (Ind. App. 1998), the plaintiffs were injured in an explosion. The employees submitted evidence showing that their employer ordered a procedure that created the possibility of generating an explosion although the employer may have been aware of chemical leaks in the plant. The company previously was cited by OSHA, and an expert testified that he believed the explosion was foreseeable. The court considered this information but concluded that it did not prove that the employer actually knew an explosion was certain to occur and cause injury. Although the employer's conduct may have amounted to gross negligence or recklessness, the plaintiffs did not establish the requisite intent. *Agee*, 695

N.E.2d at 627. The court explained that, "even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, or wilfully and unlawfully violating a safety statute, this still falls short of the kind of actual intention to injure that robs the injury of accidental character." *Agee*, 695 N.E.2d at 627-28 (*citing* 2A Lawson, *Workmen's Compensation Law*, Sec. 68.13 at 13-15 (1982)).

Herrera faces a similar challenge. Herrera submitted evidence that it was Marinoware's company policy to use the light gauge forklift to lift the steel coils and that use of the light gauge forklift was improper and unsafe. This was the only forklift Marinoware provided to complete the job, and because of the weight of the steel coils, it was improper to move the steel coils. Marinoware was cited by the Indiana Occupational Safety and Health Administration for safety violations related to the faulty and ill-equipped forklift after Herrera's injury. The availability of equipment and the procedure for moving coils were decisions that would have been made through the traditional management channels.

Furthermore, the record reflects that Marinoware had a policy of failing to train properly its forklift operators to move the coils safely and how to handle unraveled coils. Assum-

ing that the management was aware that the light gauge forklift was the only forklift available, Marinoware did not instruct its forklift operators on the proper way to move the steel coils, including using a heavy gauge forklift. Nor did Marinoware train its employees how to handle unraveled coils in a safe manner, although it was common for coils to unravel.

Although Marinoware may not have shown much regard for its employees' safety, requiring its employees to operate with improper equipment, this does not prove that Marinoware intended to injure its employees. At best, Herrera established that Marinoware knew that a dangerous condition existed. Marinoware knew that the forklift it provided was not sufficient to move the coils, knew that coils often fell off the forklift, and knew the manner in which unraveled coils were fixed. While the court does not doubt that this created a dangerous environment, knowledge of a dangerous work environment does not give rise to the type of intent to injure that removes a claim from the Workers' Compensation Act. See *Agee*, 695 N.E.2d at 628 (explaining that permitting a hazardous work condition and knowingly violating a safety statute falls short of the type of intent that must be established to remove a claim from the exclusivity provision of the Workers' Compensation Act). Nothing in the record shows that

Marinoware maintained its policies with the intent to cause injury.

_____

Herrera failed to show that Marinoware's actions may have been intentional and exceed the scope of the Workers' Compensation Act.  For this reason, Herrera's claim is subject to the exclusivity provision of the Workers' Compensation Act, and the Motion for Summary Judgment [DE 17] filed by the defendant, Marinoware Industries, on July 13, 2011, is **GRANTED**.

ENTERED this 21st day of October, 2011

                                        s/ ANDREW P. RODOVICH
                                           United States Magistrate Judge